# DWYER, Respondent, v. ST. LOUIS TRANSIT COMPANY, Appellant.

### St. Louis Court of Appeals, November 15, 1904.

1. **MALICIOUS PROSECUTION: Agency: Authority of Conductor.** The conductor of a street car, on the refusal of a passenger to pay a second fare which he demanded, called a police officer to arrest the passenger and the police officer refused to arrest him until a formal charge was made. Immediately the three went together to the police station where the conductor made the formal charge and the plaintiff was arrested, giving bond for his appearance. *Held*, the transaction was a continuous one and the conductor caused the arrest while in the service of his master, the street railway company, so as to render the latter liable in an action brought by the passenger for malicious prosecution.

2. ————: ————: ————: **Street Railways.** The authority of a conductor to eject a passenger, under section 1074 of the Revised Statutes of 1899, is made applicable by section 1163 to a conductor of a street car.

3. ————: ————: ————: **Right to Cause Arrest.** The authority of a conductor as a representative of a street railway to protect his passengers and to eject a passenger for non-payment of fare, includes the authority to call in the aid of an officer, and when he causes the arrest of the passenger, he is acting within the scope of his authority.

4. ————: ————: ————: **Harmless Error.** In an action for malicious prosecution against a street railway company, where the conductor caused the plaintiff's arrest, the admission of evidence tending to show ratification of the acts of the conductor, was harmless error.

5. ————: **Pleading.** In an action for malicious prosecution, an instruction to the jury which refers to the petition for the purpose of identifying the prosecution which formed the basis of the suit, is not open to the objection that it refers the jury to the petition in order to ascertain the issues.

6. ————: **Agency: Malice of Agent.** In an action against a corporation for malicious prosecution, the malice of the agent of the corporation causing the prosecution is the malice of the corporation.

7. ———: **Measure of Damages: Injury to Feelings.** In an action for malicious prosecution, an instruction that the plaintiff might recover for "pain or injury to his feelings" is not objectionable on the ground that it authorizes a recovery for physical pain.

8. ———: **Express Malice.** In an action for malicious prosecution, evidence that the plaintiff without cause was unreasonably and recklessly charged with having disturbed the peace, was arrested and forced to undergo a trial, was sufficient to show express malice, without evidence of ill-will, hatred or revenge.

Appeal from St. Louis City Circuit Court.— *Hon. Horatio D. Wood,* Judge.

AFFIRMED.

*Boyle, Priest & Lehmann* and *George W. Easley* for appellant.

(1) The court erred in overruling defendant's objection to the introduction of any evidence. The petition nowhere alleges any authority upon the part of the conductor conferred by defendant, or that it is within the scope of his authority to cause the plaintiff's arrest. Grayson v. St. Louis Transit Co., 100 Mo. App. 72, 71 S. W. 730. (2) The court erred in the first instruction given for plaintiff in the following particulars: In submitting to the jury that defendant, through its conductor on said car mentioned in evidence, acting within the scope of his authority, instituted the proceedings against the plaintiff, set forth in the petition. There was no evidence that he was acting within the scope of his authority when he instituted the proceedings against the plaintiff. He had left the defendant's car and gone to the police department. The relation of carmen and passengers ceased as soon as the plaintiff left the car. Railroad v. Boddy, 105 Tenn. 666, 58 S. W. 646. There should certainly be some testimony or some circumstance to show that the authority had been conferred for such a departure from the line of business of a conductor, as to leave his car and go to police headquarters for the purpose of lodging a charge. Lezinsky v. Rail-

way, 88 Fed. 437; 4 Am. Neg. 596; State v. Hancock, 73 Mo. App. 19. (3) The first, second and third paragraphs of the first instruction which refer the jury to the pleadings, to-wit, the petition, to ascertain what the prosecution was for. When you look to all the allegations of the petition, it is silent as to whose peace was charged to have been disturbed, or what the charge was, except in the general terms of a disturbance of the peace. Grant v. Railroad, 25 Mo. App. 227; Butcher v. Death, 15 Mo. 274; Shaw v. Dairy Co., 56 Mo. App. 526; Proctor v. Loomis, 35 Mo. App. 488; Flieshmann v. Miller, 38 Mo. App. 181. (4) The court erred in instructing the jury to find compensation to him "for any shame, mortification, mental anguish and pain and injury to his feelings which they may believe from the evidence was suffered by him." Swan v. Railroad, 116 Mo. 633; Connell v. Tel. Co., 116 Mo. 46, 22 S. W. 345; Deming v. Railway, 80 Mo. App. 152; State v. Workman, 75 Mo. App. 454. (5) The court erred in allowing the plaintiff by the first instruction to recover punitive damages without proof of express malice. Ruth v. St. Louis Transit Co., 98 Mo. App. 18, 71 S. W. 1055.

*H. Chouteau Dyer* for respondent.

(1) The petition states a cause of action. Grayson v. St. Louis Transit Co., 100 Mo. App. 60, 71 S. W. 730; Ruth v. St. Louis Transit Co., 98 Mo. App. 1, 71 S. W. 1055; Boogher v. Life Assn., 75 Mo. 319. (2) "The relation of passenger places the carrier under the obligation to carry the passenger safely and properly and treat him respectfully, and holds him responsible for the conduct of his servants to whom he intrusts the performance of his duty. He is bound to protect his passengers from violence and insults by strangers and copassengers and *a fortiori* against the violence and insults of his own servants." Farber v. Railroad, 116 Mo. 81, 22 S. W. 631; Snyder v. Railroad, 60 Mo. 413; Eads v. Railroad, 43 Mo. App. 536. (3) During this whole

occurrence the conductor of the car was acting as such and was endeavoring to enforce a supposed right of his employer. As an agent and servant of the corporation by which he was employed, he was engaged in the corporation's business and from the necessities of the case became and was an integral working force of the corporation acting in the line of his duty and binding his principal by his acts. Canfield v. Railroad, 59 Mo. App. 363; Meade v. Railroad, 68 Mo. App. 92; Railroad v. McKee, 99 Ind. 519. (4) . "The whole power and authority of the corporation is *pro hac vice* vested on the conductor in his relation to the passenger, and the conductor is to be considered the corporation itself." Randolph v. Railroad, 18 Mo. App. 609; McGinnis v. Railroad, 21 Mo. App. 399; Tanger v. Railway, 85 Mo. App. 28. (5) The evidence showed that the conductor was engaged in the performance of his duty when he caused and procured respondent's arrest; that he was in charge of appellant's car all the while and was engaged in no other business. Haehl v. Railroad, 119 Mo. 340, 24 S. W. 737. (6) That part of the first instruction authorizing the jury to compensate respondent "for any shame, mental anguish and pain and injury to his feelings," which they might believe from the evidence was suffered by him was proper. Sedgwick on Damages (8 Ed.), secs. 458, 459; Chamberlain v. Chandler, 3 Mason 246. (7) Damages for mental pain are compensatory. Craker v. Railroad, 36 Wis. 675; Cherry v. Railroad, 51 Mo. App. 316; Smith v. Railroad, 23 Ohio St. 10; McKinley v. Railroad, 44 Iowa 314. (8) The want of probable cause in this case is shown prima facie by the discharge of the accused and with nothing introduced as evidence by the appellant would authorize the matter to be submitted to the jury. If want of probable cause is made out the question of malice is disposed of. Stubbs v. Mulholland, 168 Mo. 62, 67 S. W. 650. (9) That part of the first instruction authorizing the recovery of punitive damages was proper. The first instruc-

tion particularly tells the jury that, "if they believe from the evidence that said alleged act or acts of the defendant were done wantonly, maliciously, and in gross disregard of plaintiff's rights as a passenger on said defendant's car, if they so find and believe him to be (and if they think just and proper in view of all the facts and circumstances in evidence), to award to plaintiff punitive damages." The jury must have found under this part of the instruction and the whole evidence clearly warranted the finding that there was express malice. Hicks v. Railroad, 68 Mo. 329; Malecek v. Railroad, 57 Mo. 17; Doss v. Railroad, 59 Mo. 27.

BLAND, P. J.—On April 16, 1903, the plaintiff, at Chestnut and Fourth streets, in the city of St. Louis, took passage on one of defendant's Eighteenth street cars to go to the Four Courts, in said city, where he had been subpoenaed to appear as a witness. He paid his fare but remained on the rear platform smoking a cigar. When the car reached Ninth street, the conductor demanded fare of him. Plaintiff replied that he had paid his fare when he first got on the car. The conductor insisted that he had not and told him he would have to pay his fare or get off. Plaintiff refused to pay a second fare or to get off. The altercation was not in angry tones but was heard by passengers sitting in the rear of the car. When Eleventh street was reached, plaintiff undertook to get off, but the conductor barred his way and told him he must pay his fare. Plaintiff insisted that he had paid his fare once and would not pay it again. The conductor then called a police officer, who was sitting inside the car, and told him that plaintiff would not pay his fare and he wanted him arrested. The officer told the conductor he would not arrest plaintiff unless he (the conductor) would make a formal charge against him. The conductor said he would do that and when the Four Courts building was reached, the policeman and the conductor got off

the car followed by the plaintiff and his friend. Plaintiff, in company with his friend, started to go up the steps of the Four Courts to the court of criminal correction, but was stopped by the police officer who told him he would have to go before the captain (meaning the captain of the police district in which the arrest was made). The four then went into the police station where the conductor lodged with the captain of police a formal charge against plaintiff of disturbing the peace, and the plaintiff was then offered the alternative of giving bond with security, in the sum of five hundred dollars, for his appearance before the police court on the eighteenth day of April to answer the charge the conductor had made against him or be committed to prison. Plaintiff gave bond and on the eighteenth appeared before the police court and after entering his plea of not guilty, was put upon trial which resulted in his acquittal.

The charging part of the petition is as follows:

"Plaintiff states that while said car, in charge of said conductor, was proceeding south on said Ninth street to Clark avenue, and thence west on said Clark avenue to a point in the middle of the block between Eleventh and Twelfth streets in said city, said conductor, in charge of said car, continued to demand of plaintiff a fare of five cents in loud, angry and threatening tones of voice, in the presence and hearing of many people in and upon said car; that when said car reached said last above-mentioned point, it was ordered stopped by the said conductor in charge of the same, and said conductor falsely, maliciously and without probable cause whatsoever, at his own instance and request caused and procured plaintiff to be arrested by said police officer aforesaid against plaintiff's will and in the presence and hearing of many people in and upon and about said car, to the great humiliation and mortification of plaintiff; and said police officer upon the instigation and demand of said conductor, in charge

of said car, then and there arrested plaintiff and took plaintiff to the police station in the Four Courts and said conductor then and there willfully, maliciously and without probable cause whatsoever charged plaintiff with disturbing the peace and then and there caused a police summons to issue 'against said plaintiff embodying said charge.

"Plaintiff further states that he was then and there compelled to furnish a bond and did so furnish a bond to assure his appearance in the First district police court of said city on or about the seventeenth day of April, 1903; that plaintiff appeared in said court on or about said last-mentioned date then and there to answer said charge of disturbing the peace.

"Plaintiff further states that a trial was had on said issue and that he was then and there on or about said last-mentioned date discharged and released from said charge aforesaid."

Verdict and judgment were for plaintiff for twenty-five dollars actual and fifty dollars punitive damages.

1. Defendant strenuously contends, first, that there is no evidence that it was within the scope of the authority of the conductor to cause the arrest of the plaintiff, and, second, that the evidence shows that the actual arrest was not made until the plaintiff left the car, and that the conductor left his place of employment (the car) and for the gratification of his individual malice went to the police station and there preferred a charge against plaintiff. The second contention will be first considered. The evidence shows that when the car reached Eleventh street, plaintiff tried to get off but was prevented from doing so by the conductor, who then called out to the police officer and asked him to arrest plaintiff for refusing to pay his fare. The discussion of the arrest was kept up until the Four Courts building was reached but, before reaching this point, the conductor was told by the officer that he would not

make the arrest unless he (the conductor) would prefer a charge against the plaintiff. The conductor said he would make the charge. At the moment of this conversation the car was stopped by the conductor, in the middle of the block opposite the Four Courts, where he and the policeman immediately left the car and went to the police station, having the plaintiff in charge as a prisoner, and the charge of disturbing the peace was then and there made by the conductor. These acts and the conversation carried on at the time by the conductor and officer, in the presence and hearing of plaintiff, give character to and are explanatory of the principal fact (the arrest and preferment of a formal charge), and show that the arrest, though not formally made on the car, was there agreed to and arranged for in the presence of the plaintiff, and that the conductor left his car for the purpose of preferring the charge against plaintiff and having him legally arrested and held. The transaction was continuous, without intermission, and was done by the conductor while serving his master as conductor.

In respect to the second contention, there is no evidence that the conductor had express authority from the defendant to call on a police officer to arrest a passenger for any offense, or supposed offense. He had the right under the statutes (secs. 1074, 1163, Revised Statutes 1899) to eject a passenger for refusing to pay fare, for disorderly conduct, etc., but no statutory power is given to arrest or cause the arrest of a passenger. But independent of any statute on the subject, if authority to call an officer by a conductor is not conceded in an emergency, it would practically put street railway travel in populous cities at the mercy of thieves and thugs. It is the duty of conductors to protect their passengers from insult and injury and to protect them from the raids of thieves and pickpockets and we must hold, as we held in the case of Grayson v. St. Louis Transit Co., 100 Mo. App. l. c. 72, 71 S. W. 730, that in cases

of flagrant breaches of the peace, to the annoyance and disturbance of his passengers, or in any emergency where a crime has been committed or is about to be committed, the conductor has the right, and it is his duty, to cause the arrest of the offender by an officer, if one is at hand. The conductor, as the representative of the railway company, is obliged to protect his passengers from violence and insult by strangers and copassengers. Farber v. Railway, 116 Mo. 81, 22 S. W. 631; Snyder v. Railroad, 60 Mo. 413; Eads v. Railway, 43 Mo. App. 536. The efficient discharge of this duty would, in case of great aggravation, require the conductor to call an officer when practicable to make an arrest. To deny him this authority would be to deny him the use of the agencies provided by law to preserve the peace, and we think that the conductor, when he made the formal charge against plaintiff to cause his arrest, was acting for the defendant and within the scope of his authority, and the fact that there was no disturbance of the passengers, or of any passenger on the car, in fact no disturbance of any kind whatever, does not militate against the authority of the conductor to cause the arrest; it shows an abuse of that authority, not the lack of it, for if he was authorized to do the act at all, the master is liable. Wood, Master and Servant (2 Ed.), p. 585; Voegeli v. Marble & Granite Co., 49 Mo. App. 643; Knowles v. Bullene & Co., 71 Mo. App. 341; Pierce v. Railroad, 44 L. R. A. l. c. 318. In this view of the case, the evidence of witnesses tending to show the ratification of the act of the conductor by the defendant is of no consequence and the error in admitting such evidence does not affect the merits of the case.

2. The court gave the following instruction for plaintiff:

"The court instructs the jury that if they find and believe from a preponderance of the evidence, first: that the defendant through its conductor on said car men-

tioned in the evidence, acting within the scope of his authority, as defined in these instructions, instituted and prosecuted the proceedings against the plaintiff set forth in the petition; second; that the prosecution alleged in said petition was finally determined in the favor of the plaintiff; third that from all the facts and circumstances connected with the case the defendant, at the time of instituting and carrying on the prosecution mentioned in the petition, had no reasonable or probable cause to believe plaintiff was guilty of the offense charged, as more fully explained in another instruction given you; fourth, that in said proceedings against the plaintiff, the defendant was actuated by malice towards plaintiff, then their verdict will be for the plaintiff, and they will assess his actual damages in such sum as they believe from the evidence will fairly and reasonably compensate him for any shame, mortification, mental anguish and pain and injury to his feelings which they may believe from the evidence was suffered by him, and directly resulting from defendant's alleged acts, and the jury is further at liberty, if they believe from the evidence that said alleged act or acts of the defendant were done wantonly, maliciously and in gross disregard of plaintiff's rights as a passenger on said defendant's car, if they so find and believe him to be (and if they think just and proper in view of all the facts and circumstances in evidence) to award to plaintiff punitive or exemplary damages, in addition to actual damages, in such sum as they believe will, under all the circumstances of the case, punish defendant and serve as a warning to others against a like course of action; and if the jury find in favor of plaintiff as to punitive damages they will so find and the amount thereof separately, and separately state in their verdict."

Defendant complains of this instruction for the following reasons: First, that it refers the jury to the petition to ascertain what the plaintiff was prosecuted

for. Second, it submits to the jury that the defendant was actuated by malice, when the petition charges that it was the conductor who was actuated by malice, that defendant, being an artificial person, could not harbor malice. Third, it was error to instruct that the plaintiff might recover ''for pain or injury to his feelings.'' The only reference the instructions make to the petition is to the criminal prosecution had in the police court, about which evidence had been given. This reference was not to any issue in the case, but was to identify a thing about which an issue was raised by the pleadings. It was no more objectionable than would have been a reference in an instruction to a horse described in a petition, the ownership of which was in issue. It is true that an artificial person (a corporation) can not entertain malice, neither can it think nor act. It can act through its agents and servants and does so act. It can also think by its officers, agents and servants and does so think, and it can harbor malice and seek revenge through these same officers, agents and servants and when they act maliciously in the service of the corporation and within the scope of the authority delegated to them, the law ascribes their malice to the corporation and holds it to the same civil liability as if the malicious act had been done by a natural person. Ruth v. St. Louis Transit Co., 98 Mo. App. 1, 71 S. W. 1055; Woodward v. Railway, 85 Mo. 142; Boogher v. Life Assn., 75 Mo. 319; Babcock v. Merchants' Exchange, 159 Mo. 381, 60 S. W. 732. In respect to the measure of damages, the instruction does not authorize a recovery for physical pain, as contended by the defendant, but for mental anguish, pain and injury to the feelings—synonymous terms in this connection—that damages are recoverable for mental anguish, pain and suffering of mind in this character of actions is the law. Ruth v. Transit Co., supra.

3. It is further contended that there was no evidence tending to prove express malice, but we think

quite to the contrary. The evidence shows that without the shadow of a cause, plaintiff, in gross disregard of his rights, was unreasonably and recklessly charged with having disturbed the peace and was arrested and forced to undergo the humiliation of a trial on this charge. This evidence was sufficient to show express malice without evidence of ill-will, hatred or revenge. Stubbs v. Mulholland, 168 Mo. 47, 67 S. W. 650.

4. The petition is somewhat overloaded with unnecessary details but there can be no doubt that it states a cause of action for malicious prosecution and evidently the defendant was of this opinion else it would not have answered over after its demurrer to the petition had been overruled.

Discovering no reversible error in the record, the judgment is affirmed. All concur.